**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **GLENDA EATMON, et al.,** § | |
| § | |
| **Plaintiffs,** § | |
| § | |
| **v.** § | **CIVIL ACTION NO. 2:08-CV-306-DF-CE** |
| § | |
| **PALISADES COLLECTION LLC,** § | |
| § | |
| **Defendant.** § | |

**O R D E R**

Before the Court is Defendant's Motion for Reconsideration, Motion for Extension of Time, and/or Motion for Relief From an Order. Dkt. No. 54.

Before the Court are Defendant's Objections to Report and Recommendation of Magistrate Judge. Dkt. No. 55. Also before the Court are Plaintiffs' response and Defendant's reply. Dkt. Nos. 56 & 57.

The Court held a hearing on November 3, 2010. *See* 11/3/2010 Minute Entry, Dkt. No. 71; *see also* 11/3/2010 Hr'g Tr., Dkt. No. 74. Having considered the briefing, oral arguments of counsel, and all relevant papers and pleadings, the Court finds that Defendant's objections should be OVERRULED and that the Report and Recommendation should be ADOPTED AS MODIFIED.

1

# I.  BACKGROUND

Plaintiffs bring suit pursuant to the federal Fair Debt Collection Practices Act, 15 U.S.C.

§ 1692 *et seq.* ("FDCPA"), and the Texas Debt Collection Practices Act, Texas Finance Code

§ 392.001 *et seq.* ("TDCPA").  *See* Dkt. No. 1.  Plaintiffs allege that Defendant illegally collected

or attempted to collect on certain motor vehicle retail installment contracts.  *Id.* at ¶ 6.  Pursuant

to a Standing Order, 28 U.S.C. § 636, and the Local Rules for the Assignment of Duties to

United States Magistrate Judges, the Court referred the above-captioned case to the Honorable

Charles Everingham IV for all pretrial purposes.  Dkt. No. 2.  Plaintiffs moved for class

certification.  Dkt. No. 32.  Judge Everingham entered a Report and Recommendation ("R&R")

on March 5, 2010, recommending certification.  Dkt. No. 52, 2010 WL 1189571.  No objections

having been filed, the Court entered an Order adopting the R&R on March 24, 2010.  Dkt. No.

53.  On March 25, 2010, Defendant moved for reconsideration and to vacate the March 24, 2010

Order, submitting that Defendant's counsel did not receive timely notice of the R&R.  Dkt. No.

54.  Defendant also filed objections to the R&R on April 5, 2010.  Dkt. No. 55.  Plaintiffs have

responded to those objections, and Defendant has replied.  Dkt. Nos. 56 & 57.

# II.  LEGAL PRINCIPLES

Because the R&R relates to whether "to dismiss or to permit maintenance of a class

action," this Court conducts a *de novo* review.  28 U.S.C. § 636(b)(1)(A) & (B); Fed. R. Civ. P.

72(b)(3).  The R&R properly sets forth the following legal principles for class certification:

The party seeking certification bears the burden of demonstrating the requirements of
Federal Rule of Civil Procedure ("Rule") 23 have been met.  *O'Sullivan v. Countrywide Home
Loans, Inc.*, 319 F.3d 732, 737-38 (5th Cir. 2003) (citation omitted).  First, under Rule 23,

Plaintiffs must "define the class with specificity and show they are members of the class." *McManus, Inc. v. Fleetwood Enters., Inc.*, 320 F.3d 545, 548 (5th Cir. 2003). Second, Plaintiffs must meet the four requirements of Rule 23(a): (1) the proposed class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be questions of law or fact common to the proposed class ("commonality"); (3) the claims or defenses of the representatives must be typical of those of the proposed class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the proposed class ("adequacy"). Fed. R. Civ. P. 23(a); *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 601 (5th Cir. 2006).

Finally, in addition to satisfying the above requirements, Plaintiffs must show that the action is maintainable under Rule 23(b)(1), (2), or (3). Fed. R. Civ. P. 23(b); *McManus*, 320 F.3d at 548. Although Plaintiffs originally contended that their class action was maintainable under either Rule 23(b)(2) or (3), Plaintiffs presented no argument to Judge Everingham on Rule 23(b)(2), so the Court considers only Rule 23(b)(3). *See* Dkt. No. 52 at 5. Under Rule 23(b)(3), the court must determine whether "questions of law or fact common to class members predominate over any questions affecting only individual members" and whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Amchem Prods. v. Windsor*, 521 U.S. 591, 624 (1997).

> The predominance inquiry requires that questions of law or fact common to the members of the class predominate over any questions affecting only individual members. The cause of action as a whole must satisfy Rule 23(b)(3)'s predominance requirement. This requirement, although similar to the commonality requirement of Rule 23(a), is far more demanding because it tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.

*Exxon Mobil*, 461 F.3d at 601 (citations and internal quotation marks omitted).

"Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996). However, a district court cannot deny certification based on its belief that the plaintiff could not prevail on the merits. *Id.* (citing *Miller v. Mackey Int'l*, 452 F.2d 424, 427 (5th Cir. 1971)). Finally, "holding plaintiffs to the plain language of their definition would ignore the ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition. District courts are permitted to limit or modify class definitions to provide the necessary precision." *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004).

## III.  REPORT AND RECOMMENDATION

Judge Everingham recommended certification of the following class:

All Texas residents who are listed as a debtor on a motor vehicle retail installment contract held by Palisades Collection, LLC and were sued by Palisades or received a demand letter from Palisades Collection, LLC on or after August 6, 2006 which indicated that Palisades was either a holder of the debt or entitled to collect it. Specifically excluded from the class are all federal judges and members of their families within the first degree of consanguinity, and the officers, directors, and counsel of record of Defendant.

Dkt. No. 52 at 6-7.

Judge Everingham found that the class members number in the thousands, that Plaintiffs' claims are typical of the class, and that the predominating common question is whether Defendant violated state and federal law by collecting debts without a license. Dkt. No. 52 at 7-11. Having modified Plaintiffs' proposed class definition, Judge Everingham found it has no

"sub-classes" that would undermine typicality and that the ineligibility of potential class members will be readily determinable from written documents. *Id.* at 10-12. Judge Everingham also found that Ms. Eatmon is an adequate class representative and that Plaintiffs' counsel is qualified to represent the class. *Id.* at 13. The R&R does not address Mr. Schark, presumably because, according to Plaintiffs' counsel at the November 3, 2010 hearing, Mr. Schark has become difficult to contact such that Ms. Eatmon and her counsel intend to move forward without Mr. Schark. *See* Dkt. No. 74 at 13:21-25. Finally, as to whether individual damages questions predominate, Judge Everingham found that "the plaintiffs' claims share a common factual basis" and that the fact "that actual damages will vary on an individual basis does not compel denial of certification." *Id.* at 14.

## IV. THE PARTIES' POSITIONS

Defendant argues that the proposed class of those who "reside in Texas" cannot be identified because Defendant only has residence information for the time when each retail installment contract was executed. Dkt. No. 55 at 2. Defendant also argues that the class includes persons for whom the statute of limitations has expired. *Id.* at 3-5. Defendant also disputes typicality, adequacy of the class representatives (for not understanding class actions), and adequacy of class counsel (for not keeping Plaintiffs adequately informed). *Id.* at 5-17. Defendant further argues that individual issues will predominate, such as whether each class member is eligible to recover and, if so, what type of damages and how much. *Id.* at 17-21.

Plaintiffs respond that there is no requirement that Defendant be able to identify all class members in order for a class to be certified. Dkt. No. 56 at 2. Plaintiffs also argue that the R&R properly found that the relevant date for statute of limitations purposes is not when the

installment contracts were executed but rather is when Defendant "*misrepresented* to class members that the debt was owed to Defendant when in fact the debt was not owed to Defendant." *Id.* at 4. Plaintiffs further submit that the R&R already properly rejected Defendants' arguments as to typicality, commonality, predominance, and adequacy of class representative and class counsel. *Id.* at 5-8.

Defendant replies that the ability to identify the class is essential. Dkt. No. 57 at 1-4. Defendant also replies that even if the statute of limitations runs from when Defendant allegedly misrepresented that a debt was owed, "there is no provision in the class definition that would limit the members of the class to those to whom the alleged false representation was made within any time period." *Id.* at 5. Defendant also reiterates its arguments as to typicality as well as adequacy of class representative. *Id.* at 5-8.

## V. DISCUSSION

Defendant filed its objections late and submitted that Defendant's counsel did not become aware of the R&R until the Court entered an Order adopting the R&R. Dkt. No. 54. Plaintiffs stated at the November 3, 2010 hearing that they were agreeable to deeming Defendant's objections to be timely. Dkt. No. 74 at 3:23-4:1. Defendant's Motion for Reconsideration, Motion for Extension of Time, and/or Motion for Relief From an Order (Dkt. No. 54) should therefore be GRANTED. *See also id.* at 4:2-5. The Court turns to the merits of the objections.

### A. Specificity, Membership, and Numerosity

Defendant argues that Plaintiffs have no evidence of the number of prospective class members or who they are. Plaintiffs submit that the Texas debtors at issue number more than 40,000. *See* Braun dep., Dkt. No. 45, Ex. A at 86 & Ex. 10. Joinder of these thousands of

putative class members would be impracticable, so the numerosity requirement is satisfied. The Court here addresses several of Defendant's objections to this finding as well as to the specificity of Judge Everingham's recommended class definition.

(1) Lack of Evidence of Demand Letters

At the November 3, 2010 hearing, Defendant argued that it has no records of to whom it sent demand letters or who received demand letters. Dkt. No. 74 at 9:8-20 & 10:22-25. As best the Court can tell, this assertion does not appear in Defendant's objections, affidavits, or underlying briefing on the motion for class certification. Instead, Defendant previously argued that Plaintiffs presented no allegations regarding anything other than lawsuits, and Defendant merely hinted in a footnote that trying to explore other communications would lead to "even greater problems." Dkt. No. 35 at 8 n.17.

In light of Defendant's purported lack of records, permitting "ex parte affidavits" from potential class members claiming to have received a demand letter might "offend due process." *Lee v. S. Home Sites Corp.*, 429 F.2d 290, 292, 297 (5th Cir. 1970) (regarding lack of records as to letters offering to sell land). But Defendant's lack of records of its own demand letters should not be a basis for precluding an action based on the allegedly illegal demand letters. Defendant has not shown why individuals should not be permitted to come forward with a demand letter or other proof thereof. *See id.* Additionally, at this time the Court lacks any evidence establishing that further discovery will not reveal the identities of recipients of demand letters.

Plaintiffs have put forth some evidence, in the form of deposition testimony by one of Defendant's employees, that even excluding those who have already settled with Defendant or filed bankruptcy, the Texas debtors at issue number more than 40,000. Braun dep., Dkt. No. 45,

7

Ex. A at 86 & Ex. 10. Plaintiffs have thereby shown that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Barnett v. Experian Info. Solutions*, No. 2:00-CV-175, 2004 WL 4032909, at *3 (E.D. Tex. Sept. 30, 2004) ("[T]he precise number and identity of class members need not be shown for certification of the class. Good faith estimates are sufficient.") (citation omitted).

### (2) Lack of Current Addresses

Defendant submits that a retail installment contract only reflects the address of a debtor at the time of signing the contract. Dkt. No. 55 at 2. Defendant argues that because it does not have current addresses for these debtors, Defendant cannot identify the class. *Id.* Defendant further submits that in about two thirds of all retail installment contract debts, "Defendant is never able to determine their residence." *Id.* at 3 (citing Braun Aff., Dkt. No. 35, Ex. 2 at ¶ 6).

Rule 23 itself contemplates that current address information might not be available for all potential class members. Rule 23(c)(2)(B) provides that for a class certified under Rule 23(b)(3), which is the type of class Plaintiffs seek to certify, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1097 (5th Cir. 1977) ("No single formula can be derived which will anticipate the myriad circumstances that may confront class action litigants attempting to identify absentee class members of a 23(b)(3) action and resolve whether the effort required is reasonable."); *see also* 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1786 (3d ed. 2005).

Moreover, difficulty in identifying potential class members can militate in favor of

"numerosity," which requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 216 (D. Md. 1997) ("several factors indicate that joinder would be impracticable: (1) the difficulty of identifying the potential plaintiffs; (2) their likely geographic dispersion . . .; and (3) the likely small size of the individual claims."); *Olvera-Morales v. Int'l Labor Mgmt. Corp.*, 246 F.R.D. 250, 256 (M.D.N.C. 2007) ("In addition, other factors also indicate that joinder would be impracticable in this case. First, the identification of all potential class members could pose substantial difficulty."). In sum, lack of current addresses for all putative class members is not a bar to finding numerosity.

### (3) Whether the Motor Vehicles Were for Personal, Family, or Household Use

> For the FDCPA to apply, the obligation at issue must qualify as a "debt" as defined in 15 U.S.C. § 1692a(5), meaning that it must be an "obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *See Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d 385, 388 (5th Cir. 2002).

*Hester v. Graham, Bright & Smith*, No. 6:04-CV-36, 2005 WL 994704, at *3 (E.D. Tex. Apr. 1, 2005). Defendant argues that it cannot readily ascertain whether the motor vehicles at issue were used for personal, family, or household purposes. Defendant suggests that "many of the class members would have used their vehicles for business purposes and would therefore not have standing to sue." Dkt. No. 55 at 9. Defendant thus argues that an individualized trial would be required for each class member to resolve this issue.

Plaintiffs responded during oral argument that the retail installment contracts themselves include this information in the form of either a "check box" or a statement that if a debtor does

not indicate otherwise, the debtor affirms that the vehicle will be used for personal, family, or household purposes.  Dkt. No. 74 at 18:2-21.  An example contract includes a "check box" labeled "personal."  *See* Ex. to Braun Aff., Dkt. No. 35, Ex. 2 at 8 of 13.  Plaintiffs' contract includes the following, followed by a check box: "Primary Use of Vehicle - You agree to use the Vehicle primarily for personal, family or household purposes. However, if the following box is checked, You will use the Vehicle primarily for business or commercial purposes."  *Id.* at 12.

The "personal, family, or household purposes" requirement of the FDCPA can thus be satisfied with written records, which is sufficient for class certification.  *See Karnette v. Wolpoff & Abramson, LLP*, No. 3:06-CV-44, 2007 WL 922288, at *12 (E.D. Va. Mar. 23, 2007) (where plaintiffs intended to rely on written records and defendant objected to difficulty of determining personal, family, or household use, court acknowledged that "courts have been considerably inhospitable to this style of objection.") (citations omitted); *Gradisher v. Check Enforcement Unit, Inc.*, 203 F.R.D. 271, 277 (W.D. Mich. 2001); *see also* Dkt. No. 52 at 11-12.  The recommended class definition should be MODIFIED, however, to limit the class to those who entered retail installment contracts involving motor vehicles for personal, family, or household use.

In sum, the specificity and numerosity requirements of Rule 23 are satisfied, and Plaintiffs have shown membership in the putative class because Defendant filed suit against the named Plaintiffs in an attempt to collect on a motor vehicle retail installment contract.  Dkt. No. 1 at ¶ 8; *see* Dkt. Nos. 55, 56, & 57.  Although Defendant submitted during oral argument that it has been unable to determine when it sued the named Plaintiffs, Defendant has not formally disputed that it sued Plaintiffs during the relevant time frame.  *See* Dkt. No. 74 at 6:18-23.

**B. Commonality**

(1) Statutes of Limitations

The parties agree that the TDCPA has a two-year statute of limitations. Dkt. Nos. 45 at 4 & 55 at 4. The FDCPA, by contrast, has a one-year statute of limitations. 15 U.S.C. § 1692k(d). The law governing the commencement of the FDCPA limitations period is unsettled, but sending a demand letter or filing a suit generally triggers the statute of limitations. *See Arvie v. Dodeka, LLC*, No. H-09-1076, 2010 WL 4312907, at *7-11 (S.D. Tex. Oct. 25, 2010).

Defendant argues that because Texas Finance Code § 392.501 "prohibits one who is not licensed from acting as a *holder* of a motor vehicle retail installment contract," the applicable statute of limitations began to run "on the date that the Defendant became a *holder* of a motor vehicle retail installment contract." Dkt. No. 55 at 4 (emphasis added). Plaintiffs respond that they do not bring a claim for violation of § 392.501. Dkt. No. 56 at 4. Instead, Plaintiffs submit, their claims are for "the later event when Defendant *misrepresented* to class members that the debt was owed to Defendant when in fact the debt was not owed to Defendant." Dkt. No. 56 at 4. Indeed, Plaintiffs' complaint cites Texas Finance Code Section 392.304, which prohibits misrepresentations:

> (a) Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices:
> . . .
> (8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding;
> . . .
> (19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.

Tex. Fin. Code § 392.304(a); *see* Dkt. No. 1 at ¶ 32. The Court therefore rejects Defendant's argument that the statutes of limitations began running at the time Defendant became the purported debt holder. Judge Everingham evidently rejected Defendant's argument, as well, by recommending certification of a class of persons that "were sued by Palisades or received a demand letter from Palisades Collection, LLC on or after August 6, 2006 which indicated that Palisades was either a holder of the debt or entitled to collect it." Dkt. No. 52 at 6.

During oral argument, Defendant also argued that the difference in the statutes of limitations of the TDCPA and the FDCPA prevents certification. In particular, Defendant submitted that Judge Everingham's proposed class definition reaches back two years pre-suit to August 6, 2006, which is outside the FDCPA's one-year statute of limitations. Plaintiffs responded that the shorter statute of limitations of the FDCPA may affect what remedies are available to each putative class member but does not affect Defendant's liability.

Defendant also submitted orally that by August 19, 2009, Defendant had paid fines to the State of Texas and obtained retroactive licenses that abrogate Plaintiffs' TDCPA claims. *See* Tex. Fin. Code § 349.304. Defendant briefed this issue in a motion for summary judgment. *See* Dkt. No. 59. Plaintiffs responded, for example, that the rights and liabilities of the FDCPA cannot be abridged by state law. Dkt. No. 60 at 11 (citing 15 U.S.C. § 1692n). Plaintiffs appeared to concede that its TDCPA claim is no longer viable because Plaintiffs presented no argument on that point (*see* Dkt. No. 60), but Defendant then filed an unopposed motion to withdraw its motion for summary judgment (Dkt. No. 66), which the Court granted (Dkt. No. 67). The retroactivity issues, as to both the TDCPA and the FDCPA, are therefore not now pending before the Court for decision, so the Court cannot at this time simply conclude that the

difference in the statutes of limitations is a moot issue.

Regardless, the Court finds no support for the proposition that a difference in statutes of limitations bars class certification. To the contrary, FDCPA classes have been certified where the class also had a state law claim with a longer statute of limitations. *See, e.g., Randolph v. Crown Asset Mgmt., LLC*, 254 F.R.D. 513 (N.D. Ill. 2008) (including FDCPA claim as well as claim under Illinois Collection Agency Act, which has a five-year statute of limitations, *see* 425 ILCS 425/9.5). The Court therefore rejects Defendant's statute of limitations arguments made in opposition to commonality.

### (2) Bankruptcy or Settlement

Defendant submits that many potential class members have entered settlement agreements with Defendant and that each settlement involves different conditions and circumstances, *e.g.*, some involve dismissals with prejudice and others involve dismissals without prejudice. Braun Aff., Dkt. No. 35, Ex. 2 at ¶ 12. Defendant submits that "an individualized physical examination of each file" would be necessary. *Id.* Defendant similarly submits that the existence and status of bankruptcy proceedings is difficult to determine, particularly because debtors often do not list Defendant as a creditor. *Id.* at ¶¶ 13-14.

Defendant's arguments regarding bankruptcies are unavailing:

> The FDCPA is meant to protect individuals who are the subject of improper collection efforts, and such individuals may be more likely to file for bankruptcy than individuals who have not been the subject of collection efforts. If the mere assertion that some class members may have filed bankruptcy and failed to properly exempt their claims was enough to defeat class certification, it is doubtful that any class involving the sort of individuals that the FDCPA was meant to protect could be certified.

*Wilborn v. Dun & Bradstreet Corp.*, 180 F.R.D. 347, 356-357 (N.D. Ill. 1998). As Judge

Everingham found, identification of potential class members that have filed bankruptcy can be determined by written documents.  Dkt. No. 52 at 11; *but see Gawry v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 942, 956 (N.D. Ohio 2009) ("While this determination may not necessarily be complex, it cannot be resolved without examining the specific details of the bankruptcy proceedings for each putative class member who filed for bankruptcy.").  On balance, the existence of bankruptcies and settlements are not a bar to class certification because overarching common questions remain regarding Defendant's lack of a debt collection license during the relevant time period.

### (3)  Variation in Damages

The FDCPA expressly contemplates class actions:

> Although the defendants contend that a series of proceedings on actual damages is a possibility, the court cannot overlook the fact that Congress specifically addressed the potential for class action suits for violations of the FDCPA. Specifically, the FDCPA provides that in the case of a class action[,] class damages may be awarded in "such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector."  15 U.S.C. § 1692k(a)(2)(B).

*Barnett*, 2004 WL 4032909, at *4.  This $500,000 in statutory damages under the FDCPA is only available in class actions.  *Whayne v. U.S. Dept. of Educ.*, 915 F.Supp. 1143, 1145 (D. Kan. 1996).  An additional $1,000 in statutory damages is available for each named plaintiff, but in addition to that amount the class representatives can also be apportioned a share of the total class award.  *McCall v. Drive Fin. Servs., L.P.*, 440 F. Supp. 2d 388, 390-91 (E.D. Pa. 2006).

Here, the claims of the proposed class have a common crux: whether Defendant unlawfully engaged in debt collection activities based on Defendant's lack of a debt collection

license during the relevant time period.  This is sufficient to find commonality in the context of the FDCPA.  *See Bontempo v. Wolpoff & Abramson, L.L.P.*, Civ. No. 06-745, 2008 WL 163051, at *6 (W.D. Pa. Jan. 15, 2008) (finding commonality where defendant allegedly utilized improper methods for calculating attorneys fees when attempting to collect on debts); *see also Randolph*, 254 F.R.D. at 518 (finding that "not being a licensed debt collector" was "standardized conduct" supporting finding of commonality).  The Court therefore rejects Defendant's arguments regarding potential variations in damages among putative class members.

## C.  Typicality

Defendant argues that the class definition includes sub-classes and that Plaintiffs' claims are not typical of all sub-classes.  Dkt. No. 55 at 5-9.  Judge Everingham recommended a class definition with no explicit sub-classes, and Judge Everingham properly found that for purposes of Plaintiffs' claims, being sued and receiving a demand letter are sufficiently similar because they "arise from a similar course of conduct and share the same legal theory," to wit, that Defendant illegally engaged in unlicensed debt collection activities.  *See* Dkt. No. 52 at 6-7 & 10-11 (quoting *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001)); *Bontempo*, 2008 WL 163051, at *6 (where defendant allegedly utilized improper methods for calculating attorneys fees when attempting to collect on debts, finding typicality and noting that "[c]ases challenging the same unlawful conduct which affects both the named plaintiff and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims") (quoting *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001)).

**D. Adequacy**

(1)  Adequacy of Class Representative

Defendants challenge the adequacy of both named Plaintiffs, but as noted in Section III, above, Plaintiffs only intend to proceed with Ms. Eatmon as class representative.  Defendants submit that at her deposition, Plaintiff Glenda Eatmon did not understand she was bringing a putative class action and did not understand what a class action is.

The Court adopts Judge Everingham's recommendation that Ms. Eatmon is an adequate class representative.  Ms. Eatmon has demonstrated a sufficient lay understanding of the above-captioned case and a willingness to represent the putative class.  *See* 2/20/2009 Eatmon Decl., Dkt. No. 32 at Attach. 1; *see also* 1/21/2009 Eatmon dep., Dkt. No. 35, Ex. 1 at 11-25 of 119. Defendant's counsel's deposition examination of Ms. Eatmon may show that she is not a lawyer and is not an expert in class actions, but Defendant has not shown any such requirement.  Rule 23(a)(4) does not require that a class representative possess extraordinary expertise, intellect, or understanding of the issues in the litigation.  *See Berger v. Compaq Computer Corp.*, 279 F.3d 313, 314 (5th Cir. 2002) (finding with regard to the Private Securities Litigation Reform Act that "[w]e have not . . . created an additional requirement under [R]ule 23(a)(4) that, after completing the process of selecting the lead plaintiff and lead counsel, a court may grant class certification only if the putative class representative possesses a certain level of experience, expertise, wealth or intellect, or a level of knowledge and understanding of the issues, beyond that required by our long-established standards for [R]ule 23 adequacy of class representatives").  Ms. Eatmon should therefore be certified as class representative.

As a preliminary matter, the Court finds that Plaintiffs' counsel has substantial experience in FDCPA cases and in representing classes in class actions.  *See* 2/26/2009 Weinstein Decl. & Walsh Decl., Dkt. No. 32 at Attachs. 2 & 3.  Plaintiffs' counsel is also class counsel in another FDCPA action in this Court's district.  *See Taylor v. Apex Fin. Mgmt., LLC*, Civil Action No. 2:09-CV-229.

Defendant argues that Plaintiffs' counsel is inadequate because counsel purportedly failed to apprise Plaintiffs of a settlement offer extended by Plaintiffs' counsel to Defendant. Defendant submits that at least two courts have sanctioned counsel for such conduct.  Dkt. No. 55 at 15-16 (citing *Deadwyler v. Volkswagen of Am., Inc.*, 134 F.R.D. 128 (W.D.N.C. 1991) & *Mace v. Van Ru Credit Corp.*, No. 94 C 7450, 1995 WL 549088 (N.D. Ill. Sept. 11, 1995)).  The *Mace* court found insufficient evidence that counsel had failed to consult the named plaintiff regarding any definite settlement offer made to the defendants.  *See* 1995 WL 549088, at *9.  The *Deadwyler* court, by contrast, sanctioned an attorney who "failed to adduce any substantial evidence to controvert his own sworn admission that he did not keep his clients advised as to significant settlement prospects."  134 F.R.D. at 140.

Defendant relies on deposition testimony by Ms. Eatmon and Mr. Schark purportedly showing that Plaintiffs' counsel presented a settlement offer to Defendant without ever consulting Ms. Eatmon or Mr. Schark.  Dkt. No. 55 at 15-16.  Plaintiffs incorporate their response in underlying briefing that, at least as to Ms. Eatmon, "[s]he refused to discuss her communications with her attorney because her attorney instructed her not to answer based on attorney-client privilege."  Dkt. No. 45 at 18 (emphasis omitted).  Ms. Eatmon's testimony

reflects that either she refused to answer Defendant's questions on privilege grounds or she simply could not remember whether she had seen or discussed the settlement offer at issue. *See* 1/21/2009 Eatmon dep. at 38-40, Dkt. No. 35, Ex. 1 at 22 of 119. Further, the Court accepts Plaintiffs' counsel's assurance that counsel discussed the settlement offer with Ms. Eatmon and obtained her approval. *See* Dkt. No. 74 at 13:15-17 & 14:1-2.

Defendant also cites Mr. Schark's deposition testimony, which states that although Mr. Schark had not seen the settlement offer at issue, Mr. Schark "agreed at some point in time to settle - - to enter into a cash settlement." *See* 1/21/2009 Schark dep. at 31, Dkt. No. 35, Ex. 1 at 32 of 119. This testimony suggests that Mr. Schark conferred with Plaintiffs' counsel regarding settlement authority, and Defendant has not shown any requirement that a client must approve specific communications drafted by his attorney.

In sum, Defendant has not put forth evidence of any misconduct by Plaintiffs' counsel, so Defendant's objection in this regard should be rejected.

Defendant also argues that Plaintiffs' counsel has acted in conflict with the proposed class because when Defendant filed for a Texas debt collection license, Plaintiffs' counsel objected, "thereby attempting to perpetuate the very 'social evil' they laud themselves for attempting to prevent." Dkt. No. 55 at 17. In their underlying briefing and at the November 3, 2010 hearing, Plaintiffs responded that they opposed Defendant's license application because Defendant had halted collection efforts and a continued halt would be in the best interests of the proposed class members. Dkt. No. 45 at 18. On balance, Defendant has not shown that Plaintiffs' counsel acted in conflict with the interests of the putative class.

Finally, Defendant argues that Plaintiffs' counsel is inadequate because during her

deposition Ms. Eatmon showed such a lack of knowledge that her counsel must have failed to adequately prepare her. The Court rejects this argument because as discussed in Section V.D(1), above, Ms. Eatmon's knowledge is adequate for purposes of being a class representative.

In sum, Plaintiffs have shown that Plaintiffs' counsel is qualified to be adequate class counsel for the proposed class.

## E. Rule 23(b)(3) — Predominance and Superiority

Rule 23(b)(3) provides:

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
. . .
(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Judge Everingham properly found predominance and superiority, and the Court hereby incorporates the R&R in that regard. Dkt. No. 52 at 13-16.

Defendant argues that individualized evidence will be necessary for any actual damages, such as for alleged mental anguish. Members of a FDCPA class can recover for actual damages. *See* 15 U.S.C. § 1692k; *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 977 (5th Cir. 2000).

According to Plaintiffs, the TDCPA also provides "actual damages" for Defendant's allegedly illegal attempts to collect on debts. *See* Dkt. No. 1 at ¶¶ 30-35. Plaintiffs argue that they seek only statutory damages plus recovery of amounts paid to Defendant by putative class members after receiving a demand letter or being sued. See Dkt. No. 74 at 18:22-19:3. Plaintiffs submit that the proof can be gathered from written documents without the need for individual trials.

Presumably, any putative class members that are not satisfied with Plaintiffs' counsel's strategy will have an opportunity to receive notice and opt out:

> [Plaintiffs'] theory, if valid, is present in all those cases as well, and . . . those members with stronger claims will have notice and an opportunity to opt-out of this class . . . .
> * * *
> This "opt out" provision is designed to ensure that even in a class action that meets all the prerequisites of Rule 23, the individual interest is respected.
>
> Further, the notion that individual plaintiffs may recover higher damages if they were to pursue their own claims is implicit in the very idea of a class action, and is part of the balance that is struck in Rule 23 of providing a vehicle for the aggregation of small claims while still seeking to protect those individual claimants. The possibility that putative class members would be entitled to greater recovery should they pursue claims on their own arises in every class action, but it [is] not grounds for denying class certification, if the other criteria are met.

*Lemire v. Wolpoff & Abramson, LLP*, 256 F.R.D. 321, 330-331 (D. Conn. 2009) (citations and internal quotation marks omitted); *see also* 7AA Wright, Miller & Kane, *supra*, § 1786 ("The notice serves to inform absentees who otherwise might not be aware of the proceeding that their rights are in litigation so that they can take whatever steps they deem appropriate to make certain that their interests are protected. In this way, it guarantees each class member an opportunity to have a day in court or, at least, to oversee the conduct of the action by the representatives.").

Regardless, the possibility of individualized proof on actual damages is not necessarily a

bar to class certification. *Randolph*, 254 F.R.D. at 519. As Judge Everingham found, Defendant's "failure to obtain a license prior to attempting to collect on a retail installment contract" involves the predominant, common question of whether Defendant's lack of a license resulted in illegal attempts to collect debts in Texas and, if so, what remedies are appropriate. Dkt. No. 52 at 15. Finally, given the evidence that the potential class may have more than 40,000 members, a class action is a superior vehicle for resolving these questions as compared to individual civil actions. *See also Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 880 (7th Cir. 2000) ("Because [FDCPA cases] are small-stakes cases, a class suit is the best, and perhaps only way to proceed."); *see also Lemire*, 256 F.R.D. at 330.

The predominance and superiority requirements of Rule 23(b)(3) are thus satisfied.

**F. Summary**

The Court finds the following class should be certified pursuant to Rule 23(b)(3):

All Texas residents who are listed as a debtor on a personal, family, or household motor vehicle retail installment contract held by Palisades Collection, LLC and who were sued by Palisades or received a demand letter from Palisades on or after August 6, 2006, which indicated that Palisades was either a holder of the debt or entitled to collect it. Specifically excluded from the class are all federal judges and members of their families within the first degree of consanguinity, and the officers, directors, and counsel of record of Defendant.

Finally, Defendant asserted during oral argument and in its withdrawn motion for summary judgment that it has obtained the proper debt collection licenses. Dkt. No. 74 at 9:6-8. Defendant's withdrawn motion for summary judgment, which is also discussed in Section V.B(1), above, reflects that Defendant obtained licenses by August 19, 2009. *See* Dkt. No. 59.

Plaintiffs' response to that withdrawn motion disputed whether Defendant timely produced the licenses and disputed whether Defendant can now rely on them. *See* Dkt. No. 60 at 4-5. Defendant has filed motions to amend its Answer and its discovery responses. *See* Dkt. Nos. 63 & 64. In light of these live disputes, limiting the class definition with an end date would be premature, and the Court therefore reserves ruling on this issue.

## VI. CONCLUSION

Defendant's Motion for Reconsideration, Motion for Extension of Time, and/or Motion for Relief From an Order (Dkt. No. 54) is hereby **GRANTED**. The Court hereby **VACATES** its March 24, 2010 Order (Dkt. No. 53). Defendant's Objections to Report and Recommendation of Magistrate Judge (Dkt. No. 55) are hereby **OVERRULED**. The Report and Recommendation (Dkt. No. 52) is hereby **ADOPTED AS MODIFIED**:

Plaintiffs' Contested Motion for Class Certification (Dkt. No. 32) is hereby **GRANTED AS MODIFIED**: the Court hereby **CERTIFIES** the modified class definition set forth in Section V.F., above. The Court also hereby **CERTIFIES** Plaintiff Glenda Eatmon as class representative. The Court further hereby **APPOINTS** Jeffrey Weinstein and Bonner Walsh as class counsel. **IT IS SO ORDERED.**

**SIGNED this 18th day of January, 2011.**


DAVID FOLSOM
UNITED STATES DISTRICT JUDGE